IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Rosemary Stevenson, | Case No. 3:08 CV 408 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Rosemary Stevenson filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny Supplemental Social Security Income benefits (SSI). Plaintiff requested judicial review pursuant to 42 U.S.C. § 405(g).[1] The Appeals Council notified Plaintiff by letter dated December 13, 2007 that her administrative appeal was denied and that she must file for judicial review within sixty days of receipt of the letter. Plaintiff, who resides in this District, timely filed this Complaint on February 19, 2008.

The case was referred to United States Magistrate Judge Benita Pearson for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2). Following briefs on the merits from both

---

[1] This Court has jurisdiction under 42 U.S.C. § 405(g): "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ."

parties, the Magistrate recommends that the Court affirm the Commissioner's decision to deny Plaintiff's claim for SSI benefits (Doc. No. 22).

This matter is now before this Court on Plaintiff's Objection to the R&R (Doc. No. 23). Defendant filed a response (Doc. No. 24), to which Plaintiff replied (Doc. No. 25). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings. For the reasons below, the Court adopts the Magistrate's R&R denying Plaintiff's claim.

## BACKGROUND

Plaintiff does not object to the factual and procedural background in the R&R (pp. 1-3). The Court finds they are accurate and adopts them in their entirety.

Plaintiff is now 44 years old and is a high school graduate. She is clinically morbidly obese, and has limited intellectual functioning (but is not mentally retarded). Plaintiff filed for SSI benefits in January 2003, complaining of physical and mental ailments, including back and knee problems, abdominal pain, anxiety, and depression. The application was denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ), who held a hearing in April 2005. The ALJ issued an opinion in May 2006 upholding the finding that Plaintiff was not disabled, and the Appeals Council denied review.

As the Magistrate aptly described in her R&R, "there appears to be no dispute that [Plaintiff] has mental and physical impairments that limit her ability to perform a full range of work. The disagreement arises over what work, if any, [Plaintiff] can perform, despite her limitations" (Doc. No. 22, p. 1).

Plaintiff objects to the Magistrate's ratification of the ALJ's opinion on four grounds: (1) the ALJ improperly discounted the opinion of a treating doctor; (2) the ALJ improperly evaluated Plaintiff's credibility; (3) the ALJ erred when he relied on the testimony of a vocational expert (VE) who failed to identify work in the national economy which Plaintiff could perform; and (4) the ALJ was tainted by impermissible bias. Each objection is addressed below.

## STANDARD OF REVIEW

In reviewing the denial of SSI benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Comm'r of Soc. Sec.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (*citing* 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## DISABILITY STANDARD

Disability under Social Security is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months . . . ." *Walters*, 127 F.3d at 529. In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (*citing* 42 U.S.C. § 423(d)(2)).

A five-step sequential analysis determines whether a person is disabled and entitled to SSI benefits. 20 C.F.R. § 416.920. This analysis may be summarized as follows:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the Listed impairments?

4. Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 416.920(4)(i)-(v); *see also Walters*, 127 F.3d at 529.

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five, in determining whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work

available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step."). The ALJ considers claimant's residual functional capacity, age, education, and past work experience, to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. The residual functional capacity, determined at Step Four, is used in Step Four, to assess if the claimant can perform past relevant work and, at Step Five, to determine whether claimant can adjust to other work. 20 C.F.R. § 416.920(f); *see also Bowen*, 482 U.S. at 146 n.5. The Commissioner may meet the burden at Step Five with testimony of a VE that supports the ALJ's findings and is based on a hypothetical question which accurately reflects the claimant's impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## DISCUSSION

### 1.     The ALJ properly considered medical evidence and was not obligated to recontact Dr. Kostrzewski.

Plaintiff objects to the Magistrate's conclusion that the ALJ appropriately discounted the opinion of Plaintiff's treating physician, Dr. Krzystof Kostrzewski, when the ALJ evaluated Plaintiff's residual functional capacity. Plaintiff further argues that if the ALJ found inadequate support for Dr. Kostrzewski's diagnosis, then the ALJ had an obligation to request Dr. Kostrzewski supplement his conclusion.

Dr. Kostrzewski's opinion and supporting evidence consists of two identical two-page Ohio Department of Job and Family Services medical forms filled out by applicants for welfare (Tr. 172-73; 194-96). On the first page, Dr. Kostrzewski provides basic data about Plaintiff, including her weight and blood pressure, and lists her medical conditions. On the second page Dr. Kostrzewski is asked to assess Plaintiff's capacity to complete a number of tasks by checking boxes and answering specific questions.

5

In his opinion, Plaintiff could stand, walk or sit for one to two hours during the course of a work day; Plaintiff could lift up to five pounds; and her ability to perform basic physical tasks (e.g., pushing/pulling, bending, reaching and repetitive foot movements) is "markedly limited." Dr. Kostrzewski did not elaborate further on the medical basis for these conclusions, even though the form prompted him to do so. His only notation in this regard is: "stiff lumbar ROM, tender flex on 45°" (Tr. 173). Finally, in response to the prompt: "After taking the appropriate history and performing the relevant physical examination," he checked a box "unemployable," concluding on one form Plaintiff's limitations would last in excess of one year (Tr. 196), and on the other form between 30 days and 9 months (Tr. 173).

The ALJ did not give Dr. Kostrzewski's opinion controlling weight, citing the lack of objective medical evidence supporting his opinion:

> As for the other opinion evidence, Dr. Kostrzewski provided a statement for Medicaid purposes in which he stated the claimant could not work []. This statement is not sufficient as evidence to establish facts material to a finding of disability under Social Security law. There is no specific statement of limitations, no authoritative endorsement of a condition, no citations to treatment records, and no findings of fact that have relevance to this decision. Dr. Kostrzewski's opinion is contradicted by the claimant's own reports of her level of activity and her testimony. This opinion is contradicted by the opinions of the State Agency physicians who believed the claimant could perform a limited range of medium exertion []. Therefore, it is not given controlling or even great weight even though Dr. Kostrzewski is a treating physician.

(Tr. 25).

Opinions of a treating physician are entitled to greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, the Sixth Circuit has held that the Commissioner "is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en

6

banc) (internal quotation marks omitted).  However, when giving diminished or no weight to a treating physician's opinion, the ALJ must provide "good reasons" for doing so.  *Allen v. Comm'r of Soc. Sec.*, No. 08-5342, 2009 WL 791552 at *4, ___F.3d___ (6th Cir. Mar. 27, 2009) (*citing* 20 C.F.R. § 404.1527(d)(2)).

This Court agrees with the Magistrate's conclusion that Dr. Kostrzewski's opinions are not supported by clinical findings and are inconsistent with other evidence, including the opinions of state agency physicians.  Therefore, the ALJ was not required to give Dr. Kostrzewski's opinion controlling or great weight.

Dr. Kostrzewski's opinion is conclusory with no supporting objective medical evidence.  His opinion consists of nothing more than marked boxes on a standard welfare form. Furthermore, his opinion is directly contradicted by Dr. Jon Starr (Tr. 491-95) who opines Plaintiff was capable of occasionally lifting up to fifty pounds; frequently carrying twenty-five pounds; standing/walking at least two hours in an 8-hour workday; sitting six hours in an 8-hour workday; pushing and pulling; occasionally climbing ramps/stairs, balancing, kneeling, crouching, crawling; and frequently stooping. Dr. Starr explains the basis for his opinion, noting Plaintiff's back problems were the cause of her exertional limitations but finding that she had good range of motion in the back and knee area and that she was healing well from the diverticulitis surgery she had recently undergone.

In addition to Dr. Starr's opinion, the opinions of other physicians, including Plaintiff's treating surgeons, Dr. Kalb (Tr. 738-39) and Dr. Sternfeld (Tr. 470-71), contradict Dr. Kostrzewski. Unlike Dr. Kostrzewski's opinion, the opinions of Drs. Kalb and Sternfeld are supported by objective medical findings.

Furthermore, it cannot be said that the ALJ failed to provide a "good reason" for giving diminished weight to Dr. Kostrzewski's opinion. The ALJ provided a detailed explanation as to why he decided not to give Dr. Kostrzewski's opinion controlling weight, focusing largely on the lack of medical support for his conclusion, especially in light of contradictory evidence (Tr. 25). Clearly the ALJ provided enough rationale under the law. *See Allen*, 2009 WL 7915552, at *4 (noting that supportability of the opinion is a factor the ALJ considers under 20 C.F.R. § 404.1527(d)(3) when determining what weight to give the opinion of a treating source).

Finally, Plaintiff argues that if the ALJ found that Dr. Kostrzewski's opinion lacked adequate objective support, the ALJ was required to recontact Dr. Kostrzewski so that he could provide additional support for his opinion.

Under 20 C.F.R. § 404.1512(e), an ALJ is required to recontact a treating physician "only if the evidence received from that source is 'inadequate' for a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006). The regulations further explain that "[the ALJ] will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1). However, the ALJ is only obligated to seek this kind of additional support when the first requirement -- that evidence received from the source is inadequate for a disability *determination* -- is not met. There is no corresponding obligation if reports lack necessary information when there is other adequate evidence in the record from which the ALJ can make a disability determination, as is the case here.

8

This Court finds there was an adequate record from which the ALJ could decide this case. The ALJ had before him not only Dr. Kostrzewski's opinion, but also voluminous medical records, Dr. Starr's opinion, and the opinions of treating surgeons Drs. Kalb and Sternfeld. The ALJ discounted Dr. Kostrzewski's opinion not only because it lacked objective clinical findings, but also because it was directly contradicted by other evidence. *See Latkowski v. Barnhart*, 93 F. App'x 963, 971 (7th Cir. 2004) (holding no recontact required when ALJ relied partially on absence of objective findings and also upon the fact that the asserted restrictions actually contradicted other substantial evidence in the record -- namely a physician's treatment notes, the plaintiff's own testimony about her activities, and the medical findings of other physicians); *Brooks v. Comm'r of Soc. Sec.*, No. 1:07 CV 185, 2008 WL 4411434 at *12 (S.D. Ohio Sept. 29, 2008) (holding no recontact of treating physician was required where the record was "adequately developed to permit a reasoned decision regarding disability" because additional evidence in the record supported the ALJ's conclusion). Therefore, Plaintiff's argument the ALJ had an obligation to recontact her treating physician is not well taken.

Finally, Plaintiff argues the ALJ's decision is against the substantial weight of the evidence because the ALJ attributed incorrect meaning to Plaintiff's metabolic equivalent unit (MET) score on her stress test. As support for his findings, the ALJ noted "[t]he claimant was able to reach 7.0 METs on a stress exercise test []. This reflects more than sedentary exertional capacity although the claimant was not able to walk as much as expected for a woman her age" (Tr. 22-23). Plaintiff argues that a MET is simply a unit of measure of the rate the body expends energy and is variable depending upon the size of an individual. Therefore, Plaintiff argues the 7.0 MET reading merely established that Plaintiff had to expend more energy to walk than an average person because of her obesity.

9

However, METs are used in a stress test to evaluate a person's tolerance for exercise. The more METs a person can expend without impacting the functioning of the heart, the better equipped the person is for physical activity. *See Williamson v. Apfel*, 166 F.3d 1216, at *6 (6th Cir. 1998) (table) ("Appellant could not show he met § 4.02 of the Listing of Impairments, as substantial evidence from Appellant's own cardiologist showed that Appellant could carry on some ordinary physical activity, could perform on an exercise test to 7 METs before his blood pressure failed to rise, and did not suffer chronic heart failure."). Regardless, the ALJ's decision is not against the substantial weight of the evidence, with or without reliance on the MET reading.

**2.     The ALJ properly evaluated Plaintiff's credibility.**

Plaintiff objects to the Magistrate's conclusion that the ALJ properly evaluated Plaintiff's credibility. Plaintiff argues the ALJ erred in his Findings of Fact and Conclusions of Law when he made the following statement:

> The claimant's presentation at hearing was not as depressed as the medical records implied that it might be. Instead, her answers appeared candid and sincere. She did not respond to questioning over-endorsing limitations and implying exaggeration. However, the records create a basis for finding she has borderline intellectual functioning and this was consistent with her presentation. Accordingly, this provides a basis for concluding that the claimant's insight into her own limitations may be diminished and that this would affect the reliability or the quality of her testimony.

(Tr. 22).

Under Social Security regulations, "objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005). However, the Social Security Administration has recognized that "even in the absence of such objective medical evidence, a claimant may experience pain severe enough to impose limitations on the capacity for

work. In such cases the ALJ must evaluate the credibility of the claimant's allegation of pain and pain-induced limitations." *Id.* (*citing* SSR 96-7p and 20 C.F.R. § 416.929(c)(2)). If the ALJ finds the objective medical evidence does not support the claimant's allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (per curiam). When evaluating a claimant's statements in light of contradicting medical evidence, the ALJ is required to consider the seven factors outlined in 20 C.F.R. § 416.929(c)(3).

"It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). Furthermore, credibility determinations of the ALJ should not be "lightly discarded." *Villareal*, 818 F.2d at 463. However, the ALJ's credibility finding must be supported by substantial evidence. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984).

Plaintiff cites to *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004), where the court held that the ALJ committed error when he determined that the claimant was exaggerating her pain and that the pain was not severe enough to prevent her from working. The *Carradine* court held the ALJ erroneously reasoned that claimant's somatization disorder implied that she exaggerated her pain symptoms. *Id.* Plaintiff analogizes that case to the ALJ's statement here, arguing that "if the claimant honestly believes that she cannot work because of limitations imposed by her medical conditions, then she is entitled to benefits" (Doc. No. 23, pp. 19-20).

The Sixth Circuit, however, has declined to extend *Carradine*. In *Rose v. Hartford Fin. Servs. Group, Inc.* 268 F. App'x 444, 452 (6th Cir. 2008), an ERISA case, the court distinguished *Carradine*, noting that in *Carradine* the plaintiff presented persuasive evidence of disabling pain, namely that she

11

underwent surgical implantation of a catheter and spinal-cord simulator in order to ease her pain. Thus, plaintiff's pain was corroborated by additional substantial evidence.

Here, Plaintiff offers no such substantial corroborating evidence. The ALJ found, in light of the record, the objective medical evidence did not support Plaintiff's statements as to the severity of her pain. The ALJ noted "[t]here is no evidence of any herniated disc on imaging studies or such nerve root impingement that the degree of pain and limitations reported by the claimant to Dr. Kostrzewski would be expected" (Tr. 23). He further noted that some of Plaintiff's own testimony about her daily activities contradicted statements she made to Dr. Kostrzewski. In sum, the ALJ's comments on Plaintiff's credibility were not against the substantial weight of the evidence.

### 3. The VE's testimony was sufficient to establish the availability of work in the national economy which can be performed by Plaintiff.

Plaintiff objects to the Magistrate's conclusion that the VE's testimony was sufficient to establish the availability of work in the national economy under the fifth step of the disability standard. Plaintiff argues the VE overstated the number of jobs available because he failed to consider Plaintiff's mental limitations, and the VE only provided a figure for the number of jobs available in the local economy, neglecting to provide a national figure.

As to whether the VE adequately considered Plaintiff's limitations, Plaintiff takes issue with the testimony that Plaintiff could perform a full range of sedentary work, despite her inability to manage a closely regimented pace of production due to her mental limitations (Tr. 789). Plaintiff maintains this testimony is inconsistent with 20 C.F.R. Part 404, Apx. 2, Subpart. P, Rule 201.00(a), which defines sedentary occupations as encompassing jobs that are "skilled, semi-skilled, professional, administrative, technical, clerical, and benchwork classifications." Plaintiff argues her limited intellectual capabilities render a significant number of sedentary work beyond her reach.

12

An ALJ may not rely on the opinion of a VE if the opinion fails to account for the medical status of a claimant. *Varley*, 820 F.2d at 779 (internal citations omitted). Here, the ALJ posed the following detailed hypothetical to the VE:

> I would like you to consider someone with these limitation. This individual would not be able to reach, extreme posture, stooping, kneeling, bending downwards more than occasionally. This individual would be able to lift 10 pounds frequently and 20 pounds occasionally. This individual would require the opportunity to sit and stand as an option, but as a fact the individual would not be able to engage in prolonged walking of periods of greater than an hour, or standing that period without an opportunity to sit for periods up to that time intermittently that would be possible. This individual would not be able to perform work that imposes a closely regimented pace or production. Close regimentation of work activity is a consequence of certain operational demands for a rapid pace or functioning with imposed tolerances. This might be required, but there is a high value placed on a product of raw materials with a pace in production or the equipment (INAUDIBLE). Close and critical supervision in this context would produce unacceptable distress. This work is different from jobs that allow the employee to determine the timing of different work activities, or determine the pace of the work. Such flexibility as that in the work structure permits the employee the opportunity to catch up with ordinary work productivity when there is a slow down. With those limitations, would this individual be able to do any of the claimant's past work?

(Tr. 787-88). The VE opined Plaintiff could not perform her past work but could perform a full range of sedentary work. The ALJ challenged the VE's conclusion, and the VE reevaluated his answer and responded that there may be a few sedentary jobs Plaintiff could not perform due to the sit/stand option but nonetheless she could perform most sedentary work (Tr. 788-89). The VE provided examples of job categories Plaintiff could perform, including a credit clerk, an order clerk, and a surveillance monitor (Tr. 789). The VE testified that these three categories made Plaintiff available for 650 jobs regionally.

It was not error for the ALJ to find the VE's testimony credible. The hypothetical quoted above includes reference to Plaintiff's mental restrictions (no closely regimented pace or production). The job categories identified by the VE reflect this limitation. The VE did not identify skilled jobs.

Plaintiff also argues the VE's identification of 650 jobs in the regional economy is insufficient to constitute substantial evidence that work exists in significant number in the national economy. Specifically, Plaintiff argues that in order to establish that a significant number of jobs existed in the national economy pursuant to 20 C.F.R. § 416.966(a), the VE was required to testify not only about the availability of jobs locally, but also about the availability of jobs nationally. In support of this proposition, Plaintiff cites *Rogers v. Astrue*, No. 07-74-GWU, 2007 WL 4589775, at *5 n.2 (E.D. Ky. Dec. 28, 2007). In that case, however, the court remanded the case because the ALJ relied on a state physician's opinion which failed to consider claimant's recent test results. As a footnote to this conclusion, the court opined that the VE's testimony did not provide for a national comparison. Such a passing statement in dicta does not warrant this Court's adherence.

Sixth Circuit cases addressing VE testimony often only cite to regional economy. *See, e.g., Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). A national comparison is not mandatory. The statutory test is whether a claimant can perform "work which exists in significant number *either* in *the region where such individual* lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B) (emphasis added); *cf. Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (holding VE testimony only as to national economy met the statutory requirement). Here, the VE testified 650 jobs which Plaintiff could perform existed in the local economy. This constitutes a significant number of jobs. *Taylor v. Chater*, 67 F.3d 300, at *1 (6th Cir. 1995) (table) (finding "500 jobs in a regional economy represents a significant number of jobs").

### 4. The ALJ's decision is not based on impermissible bias.

Plaintiff objects to the Magistrate's conclusion that the ALJ's decision was not motivated by impermissible bias. Plaintiff cites a statement about Plaintiff's credibility in the ALJ's Findings of

Fact and Conclusions of Law as the basis for her bias claim, arguing it demonstrates the ALJ's "impermissible bias against persons with low intellectual functioning" (Doc. No. 23, p. 25). The statement Plaintiff takes issue with is:

> [H]er answers appeared candid and sincere. She did not respond to questioning over-endorsing limitations and implying exaggeration. However, the records create a basis for finding she has borderline intellectual functioning and this was consistent with her presentation. Accordingly, this provides a basis for concluding that the claimant's insight into her own limitations may be diminished and that this would affect the reliability or the quality of her testimony.

(Tr. 22). Plaintiff interprets this statement as reflecting the belief of the ALJ "that no one should accept the testimony of an individual with borderline intellectual functioning because such a person can be presumed to be not fully competent to testify" (Doc. No. 23, p. 26).

The ALJ is presumed to be impartial and Plaintiff has the burden of proving the ALJ was improperly biased against her. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Impermissible bias occurs when a judge does not function in a judicial capacity, but rather entertains preconceived notions as to the outcome in a particular case. *See Garver v. United States*, 846 F.2d 1029, 1031 (6th Cir. 1988).

The Court finds Plaintiff has failed to carry her burden. In the context of evaluating Plaintiff's credibility, the Court finds the ALJ's comments were not improper. The ALJ was offering an explanation about his credibility finding: simply, that while he did not believe Plaintiff to be intentionally misrepresenting her abilities, he nonetheless discounted to some degree her statements because the ALJ believed she may not recognize her full capabilities. The comment certainly does not rise to the level of conduct required by courts for a finding of impermissible bias. *See, e.g., Vartanyan v. Chater*, 199 F.3d 1334, 1334 (9th Cir. 1999) (table) (no impermissible bias where at SSI hearing the ALJ put into the record a newspaper article with headlines: "Agency Is Called Lax in

Disability Benefits Fraud" and "An effort to weed out 'crooks' who cost the taxpayers millions of dollars a year." The article reported that many immigrants fraudulently apply for SSI disability benefits by "feign[ing] mental illness and providing false medical histories," and that "some of the immigrants' translators have coached them to claim forms of mental impairment.").

## CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate's R&R recommending this Court affirm the Commissioner's denial of Plaintiff's SSI benefits.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 31, 2009